**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HUNTSMAN CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| INTERNATIONAL RISK INSURANCE | § | CIVIL ACTION NO. H-08-1542 |
| COMPANY, | § | |
| | § | |
| Defendant/Third-Party Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| ACE AMERICAN INSURANCE | § | |
| COMPANY, *et al.*, | § | |
| | § | |
| Third-Party Defendants. | § | |

## MEMORANDUM AND OPINION

This opinion addresses issues of jurisdiction and procedure presented by this case.

The plaintiff, Huntsman Corporation ("Huntsman"), sued International Risk Insurance

Company ("IRIC") in state court in Beaumont, Texas, alleging breach of contract and

anticipatory breach of contract and seeking a declaratory judgment that IRIC is obligated to

pay the damages Huntsman sustained in a fire in its East Texas plant. (Docket Entry. No. 1,

Ex. A-1). IRIC filed a third-party petition against the Reinsurers.[1] (Docket Entry No. 1-6

---

[1]    The "Reinsurers" are Ace American Insurance Company, AIG Casualty Company f/k/a
Birmingham Fire Insurance Company of Pennsylvania, Allianz Global Risks US Insurance Company, Arch
Reinsurance Company of Nebraska, AXIS Speciality Limited Bermuda, Limit No. 2, Ltd., Commonwealth
Insurance Company, HDI Industrie Versicherung AG, Simon Andrew White as Lead Underwriter for
Heritage Syndicate 1200 ROC at Lloyd's (in his individual capacity), R. J. Kiln & Company, Ltd., Cathedral
Underwriting, Ltd., Munich Reinsurance Company, Partner Reinsurance Company, Ltd., SCOR UK
Company, Ltd., Swiss Reinsurance Company, Wurttembergische Versicherung AG, and Zurich American

at 1–2).[2]  IRIC sought a declaratory judgment that the Reinsurers must accept IRIC's tender of the defense of Huntsman's claims.  (*Id.* at ¶¶ 34–36).  IRIC also sought a declaratory judgment that if the Reinsurers refused to accept the defense, they were liable for the damages IRIC incurred in its litigation with Huntsman.  (*Id.* at ¶ 37).  In the alternative, IRIC asked the court to compel the Reinsurers to arbitrate whether IRIC had to accept the defense of Huntsman's claims.  (*Id.* at ¶ 38).

Certain Reinsurers removed to the Eastern District of Texas, Beaumont Division on January 14, 2008.[3]  (Docket Entry No. 1).  In the removal notice, the Reinsurers asserted that because "arbitration agreements between citizens of foreign countries and citizens of the United States are implicated," federal-question jurisdiction exists under the New York Convention (9 U.S.C. § 201 *et seq.*) and the Panama Convention (9 U.S.C. § 301 *et seq.*). (Docket Entry No. 1 at ¶ 24).  The Reinsurers also asserted that "[d]iversity jurisdiction is appropriate after the parties are realigned to reflect their true interests in the lawsuit."  (*Id.* at ¶ 30).

Huntsman timely moved to remand.  Huntsman argued that diversity jurisdiction was

---

Insurance Company.

[2] Although Exhibit A to Docket Entry No. 1 contains an index of state court exhibits, indicating that the third-party petition is Exhibit A-3, the third-party petition contains no label, and a list of parties and attorneys is labeled as Exhibit A-3.  Since the third-party petition contains no exhibit number, it will be referred to in this opinion simply by its Docket Entry Number and Part—Docket Entry No. 1-6.

[3] Ace American Insurance Company, AIG Casualty Company f/k/a Birmingham Fire Insurance Company of Pennsylvania, Allianz Global Risks US Insurance Company, and Zurich American Insurance Company removed this case.  The remaining third-party defendant Reinsurers consented to removal. (Docket Entry No. 1 at 1–2).

lacking because realignment of the parties was not appropriate.  (Docket Entry No. 13 at 1).
As to federal-question jurisdiction, Huntsman argued that the Reinsurers failed to meet the
removal requirements under the federal arbitration statutes.  (*Id.*).  Huntsman contended that
even if removal was appropriate, this court should use its discretion to remand because state-
law claims against IRIC predominate.  (*Id.*).  Finally, Huntsman argued that the Reinsurers
had waived their right to object to remand.  (*Id.*).

Two days after Huntsman moved to remand, the Reinsurers moved to transfer venue
from the Eastern District to the Southern District of Texas, based on the "first-to-file" rule.
(Docket Entry No. 28 at 1–2).  That motion was granted.  (Docket Entry Nos. 59–61).  The
motion to remand remained pending.

Based on careful consideration of the motion in light of the pleadings, the briefs, the
record, and the applicable law, this court denies remand.  The reasons are explained in detail
below.

## I.    Background

A detailed factual background is set out in the memorandum and order transferring
this case to this court.  (*See* Docket Entry No. 59 at 1–5).  Only a brief summary of relevant
facts is necessary here.

On April 29, 2006, a fire occurred at Huntsman's Aromatics & Olefins Plant ("the
Plant") in Port Arthur, Texas.  (Docket Entry No. 1 at ¶ 10).  The fire allegedly occurred
when a corroded piping system within the Plant ruptured and released hydrocarbons that
ignited.  (*Id.*).  Parts of the Plant were extensively damaged.  (*Id.*).

3

IRIC issued Policy PROP 05-01 ("the Huntsman-IRIC Policy") to Huntsman, effective from July 1, 2005 through July 1, 2006. (*Id.* at ¶ 11). Under the Huntsman-IRIC Policy, IRIC is responsible for insuring Huntsman and certain related entities for 100% of the designated risk up to a stated amount. (*Id.*). The policy is purportedly 100% reinsured through certificates (the "Reinsurance Certificates") issued by various Reinsurers, including the Reinsurers involved in this suit. (*Id.*).

IRIC is a "captive" insurance company wholly owned by Huntsman. IRIC was formed for the purpose of obtaining insurance coverage for the Huntsman companies through the international reinsurance market. (Docket Entry No. 1 at ¶ 12).

After the fire, Integra Technical Services Limited ("Integra") was appointed to adjust the loss. (Docket Entry No. 13 at 2). After Integra's appointment, Huntsman dealt directly with Integra and the Reinsurers on the adjustment and payment of its claim. (Docket Entry No. 59 at 2). During the adjustment process, Huntsman submitted three sworn proofs of loss and received a total of $305 million from the Reinsurers. (Docket Entry No. 1 at ¶ 15). The Reinsurers have approved paying Huntsman an additional $20 million. (*Id.*).

Huntsman provided the Reinsurers with an additional proof of loss in the amount of $45,000,000. (*Id.* at ¶ 16). The Reinsurers notified Huntsman that they needed more time to evaluate the new proof of loss. (*Id.*). Huntsman allegedly demanded that the Reinsurers confirm that payment would be made by August 31, 2007. (*Id.*). On that date, the Reinsurers sued Huntsman and IRIC in this court, seeking to compel arbitration, or alternatively, to obtain a declaratory judgment resolving certain insurance coverage issues. (*Id.* at ¶ 17).

4

On September 21, 2007, Huntsman filed this suit against IRIC in state court in Jefferson County.  (Docket Entry No. 1, Ex. A-1).  According to the state-court petition, on September 21, Huntsman had sent IRIC a letter demanding payment under the Policy and IRIC had declined, stating that it would not pay Huntsman without a judicial declaration of coverage.  (*Id.*, Ex. A-1 at ¶ 42).  In the petition, Huntsman asserted breach of contract and anticipatory breach of contract and sought a declaratory judgment that IRIC is obligated to pay the amounts Huntsman demanded for the Plant damage from the fire.  (*Id.*, Ex. A-1 at ¶ 45–61).

On October 3, 2007, IRIC tendered the defense of this action to the Reinsurers.  (Docket Entry No. 13 at 3).  They rejected IRIC's tender.  (*Id.*).  On December 12, 2007, IRIC filed its third-party petition in this case, seeking a declaratory judgment that the Reinsurers are obligated to accept the tender of defense and a declaratory judgment that if the Reinsurers fail to accept the tender of defense, they are obligated to compensate IRIC for liabilities incurred in its litigation with Huntsman.  (Docket Entry No. 1-6 at ¶¶ 34–37).  Alternatively, IRIC seeks an order compelling arbitration.  (Docket Entry No. 1-6 at ¶ 38).  The Reinsurers removed this case to the Eastern District of Texas, which transferred it to this court.  Huntsman timely moved to remand.

## II.    The Removal Standard

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed.  *See* 28 U.S.C. § 1441.  Federal-question jurisdiction exists in "all civil actions arising under the Constitution, laws, or

5

treaties of the United States." 28 U.S.C. § 1331. Federal diversity jurisdiction exists if the amount in controversy exceeds $75,000, exclusive of interests and costs, and complete diversity exists. *See Hartford Fire Ins. Co. v. 4H Ventures, Inc.*, No. H-07-4355, 2008 WL 2486045, at *1 (S.D. Tex. June 12, 2008) (citing 28 U.S.C. § 1332). The removing party bears the burden of establishing that a state court suit is removable to federal court. *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995) (citation omitted). Doubts about the propriety of removal are to be resolved in favor of remand. *Waldrop v. Penn Treaty Network Am. Ins. Co.*, No. G-08-0149, 2008 WL 3287148, at *2 (S.D. Tex. Aug. 6, 2008) (citing *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (per curiam)).

III.    **Analysis**

A.    **Diversity Jurisdiction**

The Reinsurers assert that diversity jurisdiction is present if the parties are "realigned to reflect their true interests in the lawsuit." (Docket Entry No. 1 at ¶ 30). The Reinsurers argue that realignment is proper because Huntsman and IRIC have the same ultimate interest in this litigation: obtaining indemnity from the Reinsurers for the losses from the Plant fire. (*See id.* at ¶ 31). The Reinsurers ask this court to realign the parties to make Huntsman and IRIC the plaintiffs and the Reinsurers the defendants. (Docket Entry No. 35 at 13). Huntsman responds that the realignment issue need not be decided because the Reinsurers cannot remove based on diversity. (*See* Docket Entry No. 13 at 4).

Huntsman is correct that in general, "[a] third party defendant cannot remove a case

6

to federal court on the basis of diversity jurisdiction." *Werner v. KPMG LLP*, 415 F. Supp. 2d 688, 708 (S.D. Tex. 2006) (citing *Nat'l Am. Ins. Co. v. Advantage Contract Servs., Inc.*, 200 F. Supp. 2d 620, 621–22 (E.D. La. 2002); *Tex. ex rel. Bd. of Regents of the Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 816–17 (5th Cir. 1998)); *see also Salge v. Buchanan*, No. C-07-212, 2007 WL 1521738, at *4 (S.D. Tex. May 24, 2007) ("This Court . . . adopts the view of the vast majority of the courts that a third-party defendant is not entitled to exercise the right of removal.") (footnote omitted); *Avis Rent a Car Sys., Inc. v. Zea*, No. Civ. A. G-05-469, 2005 WL 2850248, at *2 (S.D. Tex. Oct. 31, 2005) ("[T]he overwhelming majority view is that third-party defendants are not 'defendants' with[in] the meaning of that term as it is used in § 1441(a), and may not remove an action from state court.") (citations omitted). The relevant section of the removal statute, 28 U.S.C. § 1441(a), reserves the right to remove to "the defendant or the defendants," and this right has been interpreted narrowly.[4]  *See*

---

[4] 28 U.S.C. § 1441(c), which provides that "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates," does not apply where removal is based on diversity jurisdiction. *See BJB Co. v. Comp Air Leroi*, 148 F. Supp. 2d 751, 754 (N.D. Tex. 2001) ("The revised version of § 1441(c) effectively eliminated claims based upon diversity from those removable under § 1441(c)."). The *BJB* court held that "the decision in *Carl Heck* [*Engineers, Inc. v. Lafourche Parish Police Jury*, 622 F.2d 133 (5th Cir. 1980), approving of removal by third-party defendants under section 1441(c)] may continue to be cited with approval [following the amendment to Section 1441(c)] because the opinion remains good law with regard to third party removal of actions *based upon federal question jurisdiction*." *Id.* (emphasis added); *see also Washington v. Ernster*, 551 F. Supp. 2d 568, 575 (E.D. Tex. 2007) (finding that although the Fifth Circuit in *Texas ex rel. Board of Regents of the University of Texas System v. Walker*, 142 F.3d 813 (5th Cir. 1998), had found that a third-party defendant may remove a case pursuant to section 1441(c), the case at hand was "outside the purview of § 1441(c) because the parties do not assert any claims that fall within the court's federal question jurisdiction."). Because section 1441(c) does not apply where removal is based on diversity jurisdiction, section 1441(a) is the proper section to analyze with respect to determining whether removal based on diversity jurisdiction was proper here.

*Salge*, 2007 WL 1521738, at *4 ("[C]onstruing the removal statute to exclude third-party defendants heeds the Supreme Court's admonition and limits the breadth and scope of the removal statute."); *BJB Co. v. Comp Air Leroi*, 148 F. Supp. 2d 751, 752 (N.D. Tex. 2001) ("[D]istrict courts throughout the country have, in relative unison, determined that third-party defendants are not defendants within the meaning of § 1441(a), often citing to the Supreme Court's admonition in *Shamrock* to strictly construe § 1441.") (citations omitted).  In its opposition to the motion to remand, the Reinsurers assert that the parties should be realigned, which would make the Reinsurers defendants able to remove.

Courts have expressed doubt as to whether realignment may be used to allow a third-party defendant to remove.  *See Washington v. Ernster*, 551 F. Supp. 2d 568, 573 (E.D. Tex. 2007) ("At the outset, the court is skeptical that the procedure Third-Party Defendants endorse—realignment to allow removal—is permitted.").  *Washington* involved facts similar to this case.  The third-party defendants in *Washington* removed and asked the federal court to realign the parties to create complete diversity.  *Id.* at 571.  The plaintiff asserted that third-party defendants could not remove.  *Id.*  The third-party defendants argued that once the court properly realigned the parties, the third-party defendants would be deemed defendants that were permitted to remove.  *Id.* at 572.  The *Washington* court cited *Roblez v. Ramos*, No. Civ. A. 301CV0366-G, 2001 WL 896942, at *2 (N.D. Tex. Aug. 1, 2001), which distinguished *City of Indianapolis v. Chase National Bank*, 314 U.S. 63 (1941), and *Zurn Industries, Inc. v. Action Construction Co.*, 847 F.2d 234 (5th Cir. 1988), as only approving of realignment in cases filed originally in federal court and not in cases removed

8

to federal court.  *See Washington*, 551 F. Supp. 2d at 573 (citing *Roblez*, 2001 WL 896942, at *2).  "'The issue in [*City of Indianapolis* and *Zurn*] . . . was whether the *plaintiffs* could proceed in the federal forum they had chosen.  The instant case, arriving in this court on the basis of removal, poses a different question, however: whether the *defendant's* choice of a federal forum trumps the plaintiff's usual right to select the forum.'"  *Id.* (quoting *Roblez*, 2001 WL 896942, at *2 (emphasis in original)).  The *Washington* court described the *Roblez* opinion as "persuasive" but did not "assess whether realignment by a district court is appropriate in the context of removal generally."  *Id.* at 574.  Instead, the *Washington* court held that "[e]ven if the court assumes that it may realign the parties after removal has occurred, Third-Party Defendants have failed to show that realignment is appropriate under the circumstances of this case" because the plaintiff had a legitimate dispute with the defendant.  *Id.*

Similarly, in *Avis Rent a Car*, the third-party defendants sought to remove under 28 U.S.C. § 1441(a).  *See Avis Rent a Car*, 2005 WL 2850248, at *1–2.  After adopting the majority view that third-party defendants are not "defendants" under section 1441(a), *id.* at *2, the court rejected the third-party defendants' argument that they were "true" defendants who could remove, *id.* at *3.  The third-party defendants relied on *Central of Georgia Railway Co. v. Riegel Textile Corp.*, 426 F.2d 935 (5th Cir. 1970).  The *Avis Rent a Car* court distinguished *Riegel* by noting that the state court judge in that case had severed the third-party complaint from the original complaint.  *Avis Rent a Car*, 2005 WL 3850248, at *3.  The court explained that "[t]he key fact of *Riegel* is that the removal by third-party defendants

9

was proper only *after the state court severed the third-party complaint from the original cause of action*." *Id.* at *4. The *Avis Rent a Car* court explained that removal was not proper in the case before it because the third-party plaintiffs' complaint had not been severed from the original case. *Id.* The court rejected the third-party defendants' request to dismiss its original interpleader action and realign the parties because "this proposed solution . . . ignores the fact that this case was improperly removed in the first instance, and therefore, this Court has *no jurisdiction* to dismiss its Interpleader or *to realign the parties*." *Id.* (emphasis added). The *Avis Rent a Car* court concluded: "[S]hould Avis become the actual defendant in this lawsuit, and if the case falls within the boundaries of federal subject matter jurisdiction, it will have the power to remove this case to federal court. However, at the present time it does not have such power under § 1441(a)." *Id.*[5]

---

[5] In addition to *Washington* and *Avis Rent a Car*, other courts in the Fifth Circuit have questioned the propriety of realignment after removal to cure deficiencies in removal. *See Salge*, 2007 WL 1521738, at *4 n.5 ("Courts have seriously questioned whether the procedural mechanism of 'realignment' can be used to support removal at all.") (citing *Washington*, 551 F. Supp. 2d at 573–74; *Roblez*, 2001 WL 896942, at *2). The *Salge* court also noted that "the major Supreme Court and Fifth Circuit cases addressing realignment involve the question of whether suits originally filed in federal court (rather than removed) could proceed under diversity jurisdiction." 2007 WL 1521738, at *4 n.5. The court did not decide the issue because it concluded that even if the third-party defendant could properly assert realignment, realignment was inappropriate under the facts of the case. *Id.*; *see also Windhorst v. State Farm Fire & Cas. Co.*, No. 07-6961, 2008 WL 170054, at *4 (E.D. La. Jan. 16, 2008) (noting that "[s]everal courts within this circuit have expressed their doubt that *Zurn* [*Industries, Inc. v. Action Construction Co.*, 847 F.2d 234 (5th Cir. 1988)] applies to removal cases" and finding "the reasoning of *Roblez*, [*Prime Income Asset Mgmt Co. v. Waters Edge Living, LLC*, No. 3:07-CV-0102-D, 2007 WL 2229050 (N.D. Tex. Aug. 3, 2007),] and *Washington* persuasive . . ."); *Prime Income Asset Mgmt.*, 2007 WL 2229050, at *4 ("Applying the rationale of *Roblez* and *Washington*, the court declines to hold that realignment to permit removal is procedurally proper when a defendant has relied on improper joinder to remove a case based on diversity jurisdiction. This would impermissibly enable a removing defendant to substitute an 'ultimate interest' test for the typically more onerous burden imposed by the doctrine of improper joinder."); *accord Schwartz v. Liberty Mut. Ins. Co.*, No. 01-2049, 2001 WL 1622209, at *6 (E.D. Pa. Dec. 18, 2001) (noting that "[o]n its face, *City of Indianapolis* [*v. Chase Nat'l Bank*, 314 U.S. 63 (1941),] does not apply to a case in which a complaint joins a non-diverse party," and explaining that the policy concern in *City of Indianapolis* was "preventing parties from manipulating federal jurisdiction."); *but see Thompson v. Bankers & Shippers Ins. Co. of N.Y.*, 479 F. Supp.

The Reinsurers contest the applicability of the precedents questioning realignment to cure defects in removal procedure or jurisdiction and contend that there is precedent supporting realignment after removal. (*See* Docket Entry No. 35 at 13–17). The Reinsurers argue that *Roblez* and *Washington* found that the parties' interests in the litigation did not warrant realignment. (*Id.* at 14). As a result, the Reinsurers contend that these cases did not hold that realignment is generally inappropriate when a case is removed by a third-party defendant. (*Id.*). But while *Roblez* ultimately determined that realignment was improper based on the parties' interests, the court also analyzed the impropriety of realignment in removed actions. *Roblez* explained that the plaintiff's right to choose his forum and the defendant's right to remove "'are not on equal footing,'" 2001 WL 896942, at *3 n.2 (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)), and noted that original jurisdiction cases, as opposed to removed cases, are not concerned with the balance between these rights. *Id.* at *3. The *Roblez* court was "not convinced" that realignment after removal was permissible, *id.* at *2, and noted that the cases cited as support were either not removed cases, did not involve realignment, or were factually distinguishable, *id.* at *2 n.1. Similarly, in *Washington*, although the court ultimately determined that realignment was inappropriate based on the parties' interests, it disapproved of realignment in removed actions. *See Washington*, 551 F. Supp. 2d at 573–74 (noting that *Roblez* is "particularly instructive" and its rationale "persuasive").

---

956, 959 (N.D. Miss. 1979) (denying a motion to remand because realignment of the parties with their true interests created diversity jurisdiction).

The Reinsurers argue that *Roblez* "intertwines a fraudulent joinder analysis with the realignment analysis." (Docket Entry No. 35 at 14–15). *Roblez* discussed fraudulent joinder to point out the analytical difference between realignment after removal to cure deficiencies in removal jurisdiction, on the one hand, and realignment to address jurisdictional deficiencies in a case originally filed in federal court on the other hand. The *Roblez* court explained that when a case is removed,

> [t]hese competing interests, the plaintiff's (mostly unlimited) right to choose his forum against the defendant's (conditional) right to a federal forum, are generally resolved by the judicially created doctrine of fraudulent joinder. "The fraudulent-joinder doctrine tries to strike a reasonable balance among not rewarding abusive pleading by the plaintiff, the plaintiff's tactical prerogative to select the forum, and the defendant's statutory right to remove." Original jurisdiction cases such as *Zurn* and *City of Indianapolis*, however, are not concerned with this balance. If a defendant can remove, on diversity grounds, a case properly filed in state court without—at the same time—shouldering (what the case law describes as) the *heavy* burden of showing fraudulent joinder, this balance will obviously be upset.

*Roblez*, 2001 WL 896942, at *3 (footnote and internal citations omitted). The *Roblez* court pointed out that improper joinder applies if the plaintiff has improperly sought to deprive the defendant of his right to a federal forum, while realignment is used, when justified by the parties' actual interests, to be sure that diversity jurisdiction exists in cases originally brought in federal court. The *Roblez* court did not intertwine improper-joinder analysis with realignment analysis, as the Reinsurers suggest. Rather, *Roblez* explained the distinction between improper joinder in removed actions and realignment in cases originally filed in

federal court.

The Reinsurers point to authorities that have permitted realignment after removal. (*See* Docket Entry No. 35 at 15–16 (citing *Peters v. Standard Oil Co. of Tex.*, 174 F.2d 162, 163 (5th Cir. 1949); *Jackson HMA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 246 F. Supp. 2d 535, 537 (S.D. Miss. 2003); *Smilgin v. New York Life Ins. Co.*, 854 F. Supp. 464, 466 (S.D. Tex. 1994); *Commercial Computer Servs. v. Datapoint Corp.*, 641 F. Supp. 1579 (M.D. La. 1986); *Removal Cases*, 100 U.S. 457, 468–69 (1879))).  But as Huntsman points out, none of the cases the Reinsurers cite involved removal by a third-party defendant or a party otherwise unable to remove under section 1441(a).  (*See* Docket Entry No. 53 at 4).

After reviewing the cited authorities and conducting an independent search for relevant case law, this court concludes that while there is authority supporting both the proposition that realignment may be used to satisfy diversity jurisdiction in removed actions and the proposition that realignment is not appropriate when diversity was not present when the action was removed, the trend in this circuit disapproves of using realignment after removal to cure a defect in removal jurisdiction.  *See Prime Income Asset Mgmt.*, 2007 WL 2229050, at *4; *Salge*, 2007 WL 1521738, at *4 n.5; *Washington*, 551 F. Supp. 2d at 573–74; *Avis Rent a Car*, 2005 WL 2850248, at *4; *Roblez*, 2001 WL 896942, at *2.  In addition, the cases disapprove of using realignment to allow a third-party defendant to remove on diversity grounds.  *See Washington*, 551 F. Supp. 2d at 573–74; *Avis Rent a Car*, 2005 WL 2850248, at *4.  The Reinsurers in this case could not remove based on diversity jurisdiction because they are third-party defendants.  The Reinsurers could become "defendants" able to remove

under section 1441(a) and diversity jurisdiction could be created only if this court realigned

IRIC as a plaintiff and the Reinsurers as defendants.  Using realignment both to avoid the

statutory limit on the parties able to remove and the jurisdictional limit on removal is a far

cry from resolving all doubts against removal.  Such a procedure was disapproved in *Avis*

*Rent a Car*, 2005 WL 2850248, at *3–4.  The recent case law disapproving of realigning

parties to supply removal jurisdiction and to enable third-party defendants to remove is

persuasive and weighs against extending such uses of realignment to this case, in which

third-party defendants seek realignment to bring themselves within the scope of section

1441(a) and to create diversity jurisdiction.

This court need not, however, hold that realignment is inappropriate in any removed

actions to create diversity and to allow a third-party defendant to remove.  This case is

similar to *Washington* in that even if realignment in a removed action by a third-party

defendant could be appropriate, it is not appropriate in this case.  "The realignment inquiry

. . . asks 'whether the parties with the same 'ultimate interests' in the outcome of the action

are on the same side.'"  *Prime Income Asset Mgmt.*, 2007 WL 2229050, at *4 (quoting *Lowe*

*v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 (5th Cir. 1984)).  "'This test is meant to ensure

that there is an actual, substantial, controversy between citizens of different states, all of

whom on one side of the controversy are citizens of different states from all parties on the

other side.'"  *Id.* (quoting *Lowe*, 723 F.2d at 1178 (citations and internal quotation marks

omitted)).  The standard for evaluating realignment was set forth in *Washington*:

> For diversity jurisdiction to exist, there must be an actual,

14

substantial controversy between citizens of different states. Thus, a court must look beyond the pleadings, and arrange the parties according to their sides in the dispute.  The necessary collision of interest has to be determined from the principal purpose of the suit and the primary and controlling matter in dispute.  Nevertheless, [t]he determination of the primary and controlling matter in dispute does not include the cross-claims and counterclaims filed by the defendants.  Rather, it is to be determined by [the] plaintiff's principal purpose for filing its suit.

551 F. Supp. 2d at 574 (internal citations and quotation marks omitted).

The parties dispute whether there is a controversy between Huntsman and IRIC. Huntsman contends that its "'principal purpose' for filing its suit is to receive coverage under the Huntsman-IRIC Policy that IRIC has improperly withheld in breach of the Huntsman-IRIC Policy."  (Docket Entry No. 13 at 7).  Huntsman argues: "IRIC's third-party claims against the Third-Party Defendant Reinsurers do not affect Huntsman's entitlement to relief from IRIC.  Accordingly, Huntsman 'has a legitimate dispute' with IRIC, 'and no party is subject to realignment with' Huntsman 'on that claim.'"  (*Id.* (citing *Washington*, 551 F. Supp. 2d at 574; *Salge*, 2007 WL 1521738, at *5; *Roblez*, 2001 WL 896942, at *4)).  The Reinsurers argue that Huntsman and IRIC seek the same outcome in this litigation—"indemnity from Reinsurers for Huntsman's purported losses."  (Docket Entry No. 35 at 16).  The Reinsurers contend that "IRIC is simply a pass-through for Huntsman, as both Huntsman and IRIC would be entirely satisfied if the Reinsurers paid any proceeds directly to Huntsman."  (*Id.*).  The Reinsurers argue that Huntsman and IRIC are under the same control, making realignment appropriate.  (*Id.* at 16–17).  The Reinsurers also argue

15

that even if there was a dispute between Huntsman and IRIC, it would be ancillary to the litigation, and "parties should be aligned according to the main dispute, even if there are other legitimate disputes." (*Id.* at 17 (citing *Dawson v. Legion Indem. Co.*, No. Civ. 3:99-CV-2772-H, 2000 WL 124813, at *1 (N.D. Tex. Feb. 1, 2000))). According to the Reinsurers, "there is no question that the main dispute in this action is whether Reinsurers are required to pay Huntsman additional sums for its purported losses." (*Id.*).

*Prime Income Asset Management* is instructive in determining the "principal purpose" of this suit. In that case, a group of coinsured entities disputed the allocation of insurance proceeds. *Prime Income Asset Mgmt.*, 2007 WL 2229050, at *1. Some of the insureds, including Prime Income Asset Management Co., Inc. ("Prime Income") sued other insureds, referred to as "Waters Edge" and "Liberty." *Id.* Waters Edge removed the case to federal court on the basis of diversity jurisdiction, alleging that Liberty (whose presence destroyed complete diversity) had been improperly joined. *Id.* The plaintiffs moved to remand, asserting that "Liberty is not improperly joined because the declaratory relief requested, if granted, may require Liberty to return insurance proceeds it may have received and to which Liberty contends it is entitled." *Id.* at *3. Waters Edge argued that Prime Income and Liberty were so closely related that Liberty ought to be realigned as a plaintiff. *Id.* Specifically, Waters Edge argued that: Prime Income and Liberty were both ultimately owned by the same person or entity and represented by the same law firm; Prime Income performed management functions for Liberty; Prime Income and Liberty shared common officers, employees, and a principal place of business; and Liberty's CEO and director was

16

the son of the ultimate owner of both Prime Income and Liberty.  *Id.*

The court concluded that realignment was inappropriate, noting that "at least two federal courts—including this one—have expressed serious doubts about the propriety of realigning parties to permit removal, and as an alternative to the traditional improper joinder analysis."  *Prime Income Asset Mgmt.*, 2007 WL 2229050, at *4 (citing *Roblez*, 2001 WL 896942, at *3).  The court further concluded that "realignment to permit removal . . . when a defendant has relied on improper joinder to remove a case based on diversity jurisdiction," would "impermissibly enable a removing defendant to substitute an 'ultimate interest' test for the typically more onerous burden imposed by the doctrine of improper joinder."  *Id.*  The court then held that "even assuming *arguendo* that realignment is procedurally proper," Waters Edge's request for realignment would be denied.  *Id.*  To the extent Waters Edge was invoking the "single business enterprise" corporate veil-piercing doctrine, "it had failed adequately to establish its relevance or applicability" to the circumstances.  *Id.*  The court also found a real dispute between Prime Income and Liberty.  The "alleged 'close affiliation' between Prime Income and Liberty" did not establish "as a matter of law that there [was] no reasonable basis to conclude that plaintiffs may be able to obtain declaratory relief adverse to Liberty under the [Texas Declaratory Judgment Act]."  *Id.* at *6.  "The mere fact that two corporate entities are 'closely affiliated' is not of itself sufficient to establish that there is no actual, justiciable controversy between them."  *Id.* (footnote omitted).  With respect to corporate affiliation, the court noted:

"*Corporations may bring actions against each other even if* . . .

17

> *one corporation is the parent or subsidiary of the other.* It is
> true that the law sometimes disregards separate corporate forms
> in order to hold one accountable for actions of another,
> especially when failure to do so would work fraud or injustice.
> [But] before it can be found that a parent and subsidiary are one
> entity in the eyes of the law, it must first be determined whether
> the subsidiary is in fact controlled by the parent."

*Prime Income Asset Mgmt.*, 2007 WL 2229050, at *6 (emphasis added) (quoting

*Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 846 (D.C. Cir. 2002)

(citations and additional quotation marks omitted)).

The *Prime Income Asset Management* court concluded that because the plaintiffs had

failed to present evidence that Prime Income had decisionmaking authority for Liberty, and

because the plaintiffs had submitted evidence that the parties were not under common

control, "Waters Edge has failed to meet its heavy burden of showing that there is no

reasonable basis to conclude that plaintiffs may be able to obtain declaratory relief adverse

to Liberty under the [Texas Declaratory Judgment Act]." *Id.* at *7. The court remanded the

case for lack of subject-matter jurisdiction. *Id.* at *9.

The Reinsurers rely on *Dawson v. Legion Indemnity Co.*, No. Civ. 3:99-CV-2772-H,

2000 WL 124813 (N.D. Tex. Feb. 1, 2000). In *Dawson*, the plaintiffs sued in state court for

a declaratory judgment that the defendant insurance companies' policies covered the

wrongful death of the plaintiffs' son. *Id.* at *1. The insured was also a named defendant.

*Id.* The plaintiffs had brought a separate wrongful death action against the insured, but that

action was stayed after the insured filed for bankruptcy. *Id.* The stay was lifted on the

condition that the plaintiffs would seek recovery only from the insured's insurers. *Id.* The

18

insurance companies removed the declaratory judgment action on the basis of diversity, arguing that the insured, whose presence as a defendant destroyed complete diversity, should be realigned as a plaintiff. *See Dawson*, 2000 WL 124813, at *1–2. The federal court found improper joinder, noting that "[t]he primary dispute in this action is whether [the insurance companies] must provide insurance coverage for the claims brought by Plaintiffs, the injured party, against Esco, the insured." *Id.* at *2. The court concluded that:

> [E]ven though Plaintiffs and Esco have a legitimate underlying dispute in the wrongful death action, Plaintiffs and the Esco are aligned for purposes of the controlling issue in this suit—insurance coverage. Should Esco be held liable for Luke's death, Esco would side with the Dawsons in arguing that the insurance companies must cover any judgment.

*Id.* The federal court in *Dawson* quoted an opinion in which the court explained that "'the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party.'" *Id.* (quoting *Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739 (7th Cir. 1998)). The *Dawson* court also cited a case aligning an insured's administrator as a plaintiff in a suit the injured party filed against the insurer, *id.* (citing *Hedges v. Rudeloff*, 196 F. Supp. 475 (S.D. Tex. 1961)), and a case realigning the insured parties as adverse to an insurer, *id.* (citing *Thompson v. Bankers & Shippers Ins. Co. of N.Y.*, 479 F. Supp. 956 (N.D. Miss. 1979)).

The Reinsurers also rely on *Commercial Computer Services v. Datapoint Corp.*, 641 F. Supp. 1579 (M.D. La. 1986). In that case, the court concluded that realigning one of the defendants as a plaintiff was appropriate, explaining that "since the same person or persons

19

control both the plaintiff and Commercial Computer Systems, there can be no collision of interest should the court realign the parties." *Commercial Computer Servs.*, 641 F. Supp. at 1581.  The Reinsurers assert that if any dispute exists between Huntsman and IRIC, it is ancillary to the primary dispute, which relates to Huntsman's ability to obtain insurance proceeds from the Reinsurers.

Huntsman counters by arguing that the "principal purpose" of the suit should be analyzed from the plaintiff's perspective and that claims filed by defendants should not be analyzed in determining the primary purpose of the litigation.  (*See* Docket Entry No. 53 at 6).  Huntsman asserts that its purpose in filing suit was to obtain coverage under the Huntsman-IRIC Policy.  (*Id.*).

Even assuming, without deciding, that realignment could be used in this removed action both to make the third-party defendant a "true" defendant with the capability to remove under section 1441(a) and to create diversity, IRIC should not be realigned as a plaintiff.  Unlike the parties in *Dawson*, Huntsman has a real dispute with IRIC.  In *Dawson*, the court concluded that the plaintiffs did not have a true dispute with the tortfeasor in an action against the tortfeasor's insurer to recover the insurance proceeds.  *See Dawson*, 2000 WL 124813, at *2.  The *Dawson* court explained:

> The primary dispute in this action is whether Safeco, Guaranty, and Legion must provide insurance coverage for the claims brought by Plaintiffs, the injured party, against Esco, the insured.  Therefore, even though Plaintiffs and Esco have a legitimate underlying dispute in the wrongful death action, Plaintiffs and the Esco are aligned for purposes of the controlling issue in this suit—insurance coverage.

*Id.* In *Dawson*, the injured parties had directly sued the tortfeasor's insurer, and the court's determination did not take away the plaintiffs' right to choose whom and where to sue. The plaintiffs' purpose in suing the tortfeasor's insurer was to recover insurance proceeds from that insurer. Here, in contrast, Huntsman, the injured party and insured, sued IRIC, the insurer, under the Huntsman-IRIC Policy.[6] The Reinsurers contend that Huntsman's motives for suing IRIC were improper and that Huntsman's true purpose in bringing this suit was to obtain insurance coverage from the Reinsurers in the forum of Huntsman's choice. But it is at least plausible that Huntsman sued IRIC rather than the Reinsurers based on privity concerns. *Cf. In re The Bennett Funding Group, Inc.*, 60 F. App'x 863, 865, 866 (2d Cir. 2003) (unpublished) (noting that "[e]ven if the contract contained a 'cut through' provision allowing the insured to bring suit directly against the reinsurer, the Ades defendants are not insured parties under these contracts, and New York courts have not extended reinsurance contractual rights beyond the original insured," and that "we have found no New York precedent or statute suggesting that when a reinsurance contract involves captive insurance companies or fronting companies, it becomes an insurance contract or the separate policies

_____

[6] This court is similarly unpersuaded by the Reinsurers' reliance on *Commercial Computer Services*, 641 F. Supp. at 1581, in which the court permitted realignment. The court concluded that the fact that plaintiff and one of the defendants were under common control indicated that they could not have a collision of interests. *Commercial Computer Servs.*, 641 F. Supp. at 1581. The more recent and expansive analysis in *Prime Income Asset Management* is closer to the present case. In *Prime Income Asset Management*, the court recognized that parent and subsidiary corporations can have legitimate disputes and bring actions against each other. Here, Huntsman has alleged that IRIC has failed to pay under the parties' insurance contract. As a result, at this stage in the litigation Huntsman and IRIC may have a collision of interest despite their corporate relationship.

collapse into one.").[7]  Notably, the Reinsurance Certificates state: "This Agreement is solely

between the Reinsured and the Reinsurer, and save as provided for in Article 10 (Insolvency)

no Original Insured, claimant or other third party shall have any rights under this

Agreement."[8]  (Docket Entry No. 35, Ex. E at § (C)(3)).

---

[7] There is some authority to the contrary in Texas.  *See Great Atlantic Life Ins. Co. v. Harris*, 723 S.W.2d 329, 332 (Tex. App.—Austin 1987, writ dism'd) ("The general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together.") (citations omitted).  In *Great Atlantic Life Insurance*, the insurer entered into a reinsurance agreement with an intermediate reinsurer, which in turn entered into a reinsurance agreement with another reinsurer.  *See id.* at 330.  "Two agreements were necessary because GAL [the insurer] is a Florida corporation and SNL [the ultimate reinsurer] is a Texas corporation not licensed to reinsure in Florida.  UBL [the intermediate reinsurer] is licensed by both Texas and Florida and was used as an intermediary, or pass-through company, in order to accommodate the transaction."  *Id.*  The court distinguished another case that had explained that "in the absence of express contractual language to the contrary, the original insured (policy holder) is not an intended third-party beneficiary to a contract between the original insurer and its reinsurer."  *Id.* at 332.  Explaining the distinction, the *Great Atlantic Life Insurance* court stated: "GAL was the original insurer and not an individual policy holder or a stranger to the reinsurance agreement.  The contract negotiations in this case were directly between Dean (now GAL) and SNL.  UBL's role appears to have been entirely passive.  Representations by SNL were made to Dean, not to UBL, in order to accomplish the sale of GAL to Dean."  *Id.*  As a result, the court declined to construe the contract between the insurer and the intermediate reinsurer as separate from the contract between the intermediate reinsurer and the ultimate reinsurer.  *See id.* at 332–33.  The court concluded: "It is clear in the case before us that the two reinsurance agreements were executed 'at the same time, for the same purpose, and in the course of the same transaction,' . . . .  They were drafted by the same person as 'mirror agreements' and were executed on the same day as part of the same transaction—the sale of GAL to Dean.  We will therefore construe them as one instrument."  *Great Atlantic Life Ins. Co.*, 723 S.W.2d at 333.

It is uncontested that IRIC is essentially a passive corporation, but its existence is more than a legal formality or fiction.  Huntsman did not approach the Reinsurers to obtain primary insurance only to find that it needed IRIC to make the transaction legal.  There is no evidence in the present record that the Huntsman-IRIC Policy and the Reinsurance Certificates were drafted by the same person, executed on the same day, and clearly part of the same transaction, as was clearly the case in *Great Atlantic Life Insurance*.  In addition, unlike *Great Atlantic Life Insurance*, the plaintiff here is the insured, rather than an insurer seeking recovery from its reinsurer.  Under these circumstances, the contracts between the insured and the insurer on the one hand, and the insurer and the reinsurers on the other, are not readily interpreted as a single contract.  The rule that "in the absence of express contractual language to the contrary, the original insured (policy holder) is not an intended third-party beneficiary to a contract between the original insurer and its reinsurer" applies.  *See Great Atlantic Life Ins. Co.*, 723 S.W.2d at 332.

[8] The Reinsurance Certificates do contain a "Cut Through Clause" that provides for the Reinsurers to directly indemnify the insured in certain circumstances, but the clause does not indicate that the insured has rights under the Reinsurance Certificates or otherwise provide that the Reinsurance Certificates collapse

The mere fact that Huntsman sued its captive insurer for breach of the insurance policy under which Huntsman is the insured does not warrant realigning the parties. *See Prime Income Asset Mgmt.*, 2007 WL 2229050, at * 6 ("The mere fact that two corporate entities are 'closely affiliated' is not of itself sufficient to establish that there is no actual, justiciable controversy between them.") (footnote omitted). The fact that IRIC is a captive insurer is not improper. *Cf. Humana Inc. v. Comm'r of Internal Revenue*, 881 F.2d 247, 255 (6th Cir. 1989) (noting in the tax context that "Congress has manifested no intent to disregard the separate corporate entity in the context of captive insurers"). As in *Prime Income Asset Management*, the Reinsurers have "failed adequately to show that [IRIC and Huntsman] are so closely related as to eliminate their separate identities for purposes of their ability to bring actions against each other." *See Prime Income Asset Mgmt.*, 2007 WL 2229050, at *6.

In sum, realignment is inappropriate under the facts presented. Realignment for the dual purposes of allowing a third-party defendant to become a "true" defendant able to remove an action to federal court, and to create diversity jurisdiction, is questionable in this circuit. Even if such realignment was permissible, it is inappropriate here because the plaintiff's primary purpose in bringing suit is to recover under the Huntsman-IRIC Policy. This court does not have diversity jurisdiction over Huntsman's case. To avoid remand, federal-question jurisdiction must be present.

---

into the Huntsman-IRIC Policy.  (Docket Entry No. 35, Ex. E at § (C)(7)).

B.       **Federal-Question Jurisdiction**

1.       **The Parties' Contentions**

The Reinsurers contend that this case arises under the New York Convention, also known as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*), and the Panama Convention, also known as the Inter-American Convention on International Commercial Arbitration (9 U.S.C. § 301 *et seq.*), (together, the "Convention").[9]   (Docket Entry No. 1 at ¶ 24).   The Reinsurers argue that "arbitration agreements between citizens of foreign countries and citizens of the United States are implicated," (*id.*), and that removal based on federal-question jurisdiction under 28 U.S.C. § 1441(c) is proper, (*id.* at ¶ 25).

Huntsman asserts that removal under the Convention is limited to defendants.   (*See* Docket Entry No. 13 at 9).   Huntsman also argues that removal under 28 U.S.C. § 1441(c) is inappropriate because section 1441(c) requires an independent basis for removal, the only possible independent basis for removal is the Convention, and the Reinsurers cannot meet the requirements for removal under the Convention.   (*See id.* at 10–11).

The Reinsurers respond that Huntsman is analyzing the issues out of order.   According to the Reinsurers, a court should first determine whether removal is proper under section

---

[9] Huntsman explains that the Panama Convention incorporates the relevant portions of the New York Convention, and that as a result, no analysis relevant to removal would apply to the Panama Convention and not the New York Convention.   (Docket Entry No. 13 at 9 n.6).   For this reason, this opinion uses the term "Convention" interchangeably to refer to the New York Convention, the Panama Convention, or both. Huntsman also contends that it is unclear whether the Panama Convention has any application here because the foreign Reinsurers do not appear to be domiciled in any of the countries that are signatories to the Panama Convention.   (*Id.*).

1441(c) and then determine whether removal under a specific federal statute is appropriate. (Docket Entry No. 35 at 6).  The Reinsurers argue that the Fifth Circuit permits removal by third-party defendants under 28 U.S.C. § 1441(c), and that a third-party defendant may remove an entire action to federal court when the third-party claims are "separate and independent" from the claims filed by the plaintiff and those third-party claims could have been removed based on federal-question jurisdiction if they had been part of an independent suit.  (*Id.* at 7).  The Reinsurers contend that IRIC's claims against them are based on the Reinsurance Certificates executed between IRIC and the Reinsurers, making these claims separate and independent from Huntsman's claims against IRIC.  (*Id.* at 8–9).  The Reinsurers argue that because IRIC's claims against the Reinsurers arise out of the Certificates, which contain arbitration agreements, federal-question jurisdiction under the Convention is present.  (*Id.* at 10).

Huntsman counters that section 1441(c) only applies when a separate controversy within federal jurisdiction exists and that because removal under the Convention may only be effected by "the defendant or the defendants," federal jurisdiction is lacking here.  (Docket Entry No. 53 at 8).

### 2.    Analysis

Section 1441(c) provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district

> court may determine all issues therein, or, in its discretion, may
> remand all matters in which State law predominates.

28 U.S.C. § 1441(c).

Other district courts within the Fifth Circuit have considered removal by a third-party defendant under the Convention and under section 1441(c).  In *Ballard v. Illinois Central Railroad Co.*, 338 F. Supp. 2d 712, 714 (S.D. Miss. 2004), the court addressed removal by a third-party defendant on the basis of federal-question jurisdiction arising from the Federal Arbitration Act ("FAA") and the New York Convention.  The third-party defendant alleged that its contract with the third-party plaintiff required arbitration of contractual disputes.  *Id.* The third-party defendant also asked the federal court to exercise supplemental jurisdiction over the plaintiff's claims.  *Id.*  The court first concluded that section 1441(c) permitted removal, noting that "a third-party claim for indemnity based on a separate contractual indemnity obligation is considered a 'separate and independent claim' pursuant to § 1441." *Id.* (citations omitted).  The court explained that while the FAA requires an independent basis for federal subject-matter jurisdiction, the "removal provision of the Convention provides that actions that fall under the Convention are removable to federal district court." *Id.* at 715 (citing 9 U.S.C. § 205; *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002); *Roser v. Belle of New Orleans*, No. Civ. A. 03-1248, 2003 WL 22174282 (E.D. La. Sept. 12, 2003)).  The court retained jurisdiction over the third-party claim, but ultimately remanded the plaintiff's original action "to preserve the plaintiff's choice of forum." *Id.* (citing *Carl Heck Eng'rs, Inc. v. Lafourche Parish Police Jury*, 622 F.2d 133, 133, 136 (5th Cir. 1980); *Davis v. Life*

*Ins. Co. of Miss.*, 700 F. Supp. 323, 326–27 (N.D. Miss. 1988)).

Similarly, in *Roser v. Belle of New Orleans, L.L.C.*, No. Civ. A. 03-1248, 2003 WL 22174282 (E.D. La. Sept. 12, 2003), the court permitted a third-party defendant to remove under the New York Convention and section 1441(c). In that case, the plaintiff sued in state court under the Jones Act, general maritime law, the Longshore and Harbor Workers' Compensation Act, and the Louisiana Civil Code. *Roser*, 2003 WL 22174282, at *1. One of the defendants filed third-party claims for indemnity and defense against the other defendant's insurers, and one of the third-party defendants removed to federal court. In denying remand, the federal court noted that "[t]he Fifth Circuit, . . . unlike many courts, has repeatedly confirmed that third party defendants may remove entire cases pursuant to § 1441(c)." *Id.* at *2 n.2. The federal court concluded that although 28 U.S.C. § 1445(a) normally precludes removal under the Jones Act, removal would stand if the section 1441(c) requirements were met. *See id.* at *2–3. The court determined that the New York Convention applied to the third-party claims. *See id.* at *5. Because the third-party claims were "separate and independent," removal was proper under section 1441(c). *Id.* at *5–6. The court noted that it did "not decide whether a third party defendant may remove an entire action relying solely on the removal provision found in 9 U.S.C. § 205," if section 1441(c) did not apply. *See id.* at *6 n.7 ("The Court emphasizes that its ruling on Plaintiff's motion to remand is based on the application of the Convention's enforcement legislation *and* 28 U.S.C. § 1441(c)."). After finding federal jurisdiction over the third-party claim, the court declined to remand the plaintiff's claims because section 1441(c) authorizes remand only of

27

"'matters in which State law predominates.'" *Roser*, 2003 WL 22174282, at *6 (quoting 28 U.S.C. § 1441(c)).

Huntsman points to *Smith ex rel. Smith v. Norman*, No. C2-01-01129, 2002 WL 1586308 (S.D. Ohio Apr. 30, 2002), in arguing that third-party defendants cannot remove under 9 U.S.C. § 205. (Docket Entry No. 13 at 9–10). In *Smith*, "[o]n the eve of trial," third-party defendants removed the entire case to federal court based on the New York Convention. 2002 WL 1586308, at *1. The parties seeking remand argued that removal by third-party defendants was improper. *Id.* The court noted that cases decided under the general removal statute, 28 U.S.C. § 1446(a), had refused removal by third-party defendants. *Id.* (citations omitted). The court explained that section 205 of the Convention contains the same language as the general removal statute specifying that "the defendant or the defendants" have the ability to remove. *Id.* at *2. The court rejected the Fifth Circuit's decision in *McDermott Int'l, Inc. v. Lloyds Underwriters*, 944 F.2d 1199 (5th Cir. 1991), which concluded that "unlike the general removal statute, which is interpreted narrowly, the Convention must be construed broadly to achieve Congress's intended purpose." *Id.* (citing *McDermott*, 944 F.2d at 1211–12). Instead, the *Smith* court "agree[d] with [*In re Conoco EDC Litigation*, 123 F. Supp. 2d 340, 343 (W.D. La. 2000),] that the Convention should not be construed so broadly as to guarantee removal of any state law case in which a foreign excess insurer is eventually named as a third-party defendant." *Id.* The *Smith* case did not involve removal under section 1441(c), but only considered removal under section 205 of the Convention.

28

Huntsman also points to *Caringal v. Karteria Shipping, Ltd.*, 108 F. Supp. 2d 651 (E.D. La. 2000), for the proposition that the Convention does not allow removal by third-party defendants.  (Docket Entry No. 53 at 7).  In *Caringal*, the court found that only "true" defendants could remove under section 205, the Convention's removal section.  *See Caringal*, 108 F. Supp. 2d at 654.  The court also noted the majority approach limiting removal under section 1441(c) to "true" defendants but explained that the Fifth Circuit had "adopted a minority position allowing third-party defendants to remove under subsection (c) under limited circumstances."  *Id.* at 654–55.  The *Caringal* court explained that while the Fifth Circuit had permitted removal based on a third-party demand for contractual indemnity if the demand was separate and independent from the plaintiff's state-law cause of action, the Fifth Circuit had also held that a third-party indemnity claim based on joint liability was not "separate and independent."  *Id.* at 655.  The *Caringal* court concluded that although the Fifth Circuit permitted removal by a third-party defendant under section 1441(c) in certain circumstances, such circumstances were not present because "[t]he third-party demands made by the cargo parties on the chartering parties are exclusively based on the alleged full or, in the alternative, joint liability of the chartering parties rather than any independent contractual obligations."  *Id.*

*Caringal* is distinguishable from the present case.  In this case, IRIC's claims against the Reinsurers are based on an independent contractual obligation under the Reinsurance Certificates, and, as discussed further later in this opinion, constitute "separate and independent" claims within the meaning of section 1441(c).  This case falls within the

29

categories of cases for which, as the *Caringal* court recognized, the Fifth Circuit permits removal by a third-party defendant under section 1441(c).  *See Caringal*, 108 F. Supp. 2d at 655 ("The Fifth Circuit has held that a third-party demand for contractual indemnity is sufficient to remove the entire action from state court to federal court where the third party demand is separate and independent from the plaintiff's main state law cause of action.") (citing *Carl Heck*, 622 F.2d at 135).

The Reinsurers did not remove under the Convention's removal procedure.  Rather, they removed under section 1441(c) on the basis that the third-party petition contains separate and independent claims that are within federal-question jurisdiction under the Convention.  (*See* Docket Entry No. 1 at ¶ 25 ("This matter is removable pursuant to 28 U.S.C. § 1441(c) because IRIC's Third-Party Petition is a separate and independent claim seeking declaratory judgment that Reinsurers be required to accept IRIC's purported 'tender of defense' of this action, or alternatively, that the court compel arbitration of the issue."); *see also id.* at ¶ 26 ("Because this action concerns an arbitration agreement that is not entirely between citizens of the United States, federal-question jurisdiction exists pursuant to the New York Convention.   Federal-question jurisdiction also exists pursuant to the Panama Convention.") (internal citations omitted)).  For this reason, *Ballard* and *Roser* apply and *Smith* does not.

30

*Ballard* and *Roser* each permitted a third-party defendant to remove because that defendant had shown both that the third-party claims asserted against it fell within the scope of the Convention and that those claims were "separate and independent." *See Ballard*, 338 F. Supp. 2d at 714–15; *Roser*, 2003 WL 22174282, at *6.[10]  By contrast, *Smith* did not analyze removal under section 1441(c), instead finding that removal of an entire action by a third-party defendant, *solely on the basis of the Convention*, would not be proper.  *See Smith*, 2002 WL 1586308, at *2 ("This court agrees with *Conoco* that the Convention should not be construed so broadly as to guarantee removal of any state law case in which a foreign excess insurer is eventually named as a third-party defendant."); *see also id.* at *3 ("In sum, the Court concludes that only defendants may properly remove under the Convention.").

Even if section 205 of the Convention only permits removal by "true" defendants, section 1441(c) allows removal if "a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action . . . ."  28 U.S.C. § 1441(c).  Section 1441(c) requires that the separate and independent claim have its own *basis for federal-question jurisdiction*.  If such a basis is established, the section 1441(c) procedures for

---

[10] *See also Lannes v. Operators Int'l*, No. Civ. A. 04-584, 2004 WL 2984327, at *8 n.25 (E.D. La. Dec. 20, 2004) ("In [*Caringal*] *v. Karteria Shipping, Ltd.*, 108 F. Supp. 2d 651, 654–55 (E.D. La. 2000), the court held that a third-party defendant could not remove a case pursuant to § 205 when the third-party claim did not constitute a 'separate and independent' claim within the meaning of 28 U.S.C. § 1441(c).  [*Caringal*] is inapposite.  West of England is a direct defendant by virtue of plaintiff's direct actions against it . . . . *Operators' cross-claim against West of England is a 'separate and independent' claim within § 1441(c), and, therefore, even if West of England was considered a third-party defendant, West of England properly removed this action*.") (emphasis added) (internal citations omitted).

remand may be used.  The Reinsurers may rely on the Convention as the basis for federal-question jurisdiction and rely on section 1441(c) for removal procedure.

Under section 1441(c), the Reinsurers must show that IRIC's third-party claims against it are "separate and independent" from Huntsman's claims against IRIC and that IRIC's claims against the Reinsurers are subject to federal-question jurisdiction.  If the Reinsurers meet this burden, the entire action is removable under section 1441(c).

The Fifth Circuit has held that a claim is separate and independent if it is distinct from the other claims in the case.  *See Carl Heck Eng'rs, Inc. v. Lafourche Parish Police Jury*, 622 F.2d 133, 136 (5th Cir. 1980), *superseded by statute on other grounds*, Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089, *as recognized in Gracia v. Irvine*, No. 4-91-442-E, 1992 WL 150093, at *1–2 (N.D. Tex. June 10, 1992).  "In *Carl Heck*, the Fifth Circuit defined a separate and independent claim as 'not unrelated to the main claim, but sufficiently independent of it that a judgment in an action between those two parties alone can be properly rendered.'"  *Liberty Mut. Ins. Co. v. Nat'l R.R. Passenger Corp.*, Nos. 06-0265, 06-1886, 06-1888, 2006 WL 2228948, at *3 (E.D. La. Aug. 2, 2006) (quoting *Carl Heck*, 622 F.2d at 136).  "The Fifth Circuit has specifically held that a contractual indemnity agreement is a 'separate and independent' obligation within the meaning of § 1441(c)."  *Wormley v. S. Pac. Transp. Co.*, 863 F. Supp. 382, 384 (E.D. Tex. 1994) (citing *In re Wilson Indus., Inc.*, 886 F.2d 93, 96 (5th Cir. 1989); *Carl Heck*, 622 F.2d at 136; *Marsh Inv. Corp. v. Langford*, 494 F. Supp. 344 (E.D. La. 1980), *aff'd*, 652 F.2d 583 (5th Cir. 1981) (per curiam)); *see also Ballard*, 338 F. Supp. 2d at 714 ("The Fifth Circuit

32

has also held that a third-party claim for indemnity based on a separate contractual indemnity obligation is considered a 'separate and independent claim' pursuant to § 1441.") (citing *Jones v. Petty-Ray Geophysical*, 954 F.2d 1061, 1066 (5th Cir. 1992); *Davis v. Life Ins. Co. of Miss.*, 700 F. Supp. 323, 326 (N.D. Miss. 1988)).  In *Roser*, the court stated:

> The Fifth Circuit has explained that "a federal claim is separate and independent if it involves an obligation distinct from the nonremovable claims in the case."  By their very nature, third party indemnity claims necessarily are dependent on liability being established on the underlying claim.  Although this fact might seem to suggest that third party indemnity claims never can be 'separate and independent' for purposes of § 1441(c), the Fifth Circuit has confirmed the contrary to be true.  Rather, in this circuit, third party indemnity claims are *not* "separate and independent" when they are premised on an allegation that the third party defendant's conduct caused the plaintiff's injuries.  On the other hand, a third party claim that seeks indemnity based on a separate obligation owed to the defendant, such as a contractual indemnity obligation, is a separate and independent claim.

2003 WL 22174282, at *5 (internal citations omitted).

Courts have held that removal by a third-party defendant reinsurer is appropriate under section 1441(c).  In *Davis v. Life Ins. Co. of Miss.*, 700 F. Supp. 323, 324 (N.D. Miss. 1988), the plaintiff sued for life insurance policy proceeds and sought punitive damages for bad-faith refusal to pay.  The defendant insurance company filed a third-party complaint asserting liability under a reinsurance agreement.  *Id.*  The third-party defendant reinsurance company removed to federal court.  *Id.*  The court noted tension between the Fifth Circuit's holding in *Carl Heck* that "'a claim essentially seeking indemnity should be considered separate and independent,'" *id.* at 326, and the Fifth Circuit's holding in *Moore v. United*

33

*Services Auto Association*, 819 F.2d 101 (5th Cir. 1987), which, in evaluating whether a

claim was separate and independent, looked to whether success on the claim purportedly

creating federal jurisdiction would be contingent on success on the state-court claims.[11]

*Davis*, 700 F. Supp. at 325.  Finding *Carl Heck* to be more on point because it involved

removal by a third-party defendant sued on an indemnity claim, the *Davis* court felt

> compelled to follow the direct authority of *Carl Heck* and hold
> that Life Insurance Company of Mississippi's indemnity action
> against American Bankers, based on a contract between those
> two parties, is separate and independent from the plaintiff's
> claim against Life Insurance Company of Mississippi which is
> based on the alleged tortious breach of a contract between the
> plaintiff's decedent and Life Insurance Company of
> Mississippi.[12]

*Id.* at 326.

Under these authorities, IRIC's third-party claims against the Reinsurers are separate

and independent from Huntsman's claims against IRIC.  IRIC's claims against the Reinsurers

are based on liabilities arising from the Reinsurance Certificates between IRIC and the

Reinsurers.  IRIC's claims against the Reinsurers are based on a separate contractual

---

[11] In *Moore*, the plaintiff brought a state court negligence action against a driver.  The plaintiff then joined a claim against the driver's insurance company alleging bad faith refusal to pay.  The court found that the plaintiff's claim against the insurance company for bad faith refusal to pay was contingent on the plaintiff's proving that the insurer was liable under the policy, which was in turn contingent on the plaintiff prevailing on her negligence claim against the driver.  These contingencies prevented the plaintiff's claim against the insurance company from being separate and independent.  *Davis*, 700 F. Supp. at 325 (citing *Moore*, 819 F.2d at 104).

[12] Although the court found that removal was proper, it also found that judicial economy would not be advanced by keeping the entire case in federal court and that any gain in judicial efficiency would not outweigh the plaintiff's choice of forum.  The court remanded the plaintiff's original claim to state court. *Davis*, 700 F. Supp. at 327.

indemnity obligation that is not involved in Huntsman's claims against IRIC.  (*See* Docket

Entry No. 1-6 at ¶¶ 25–26 (describing the Reinsurance Certificates providing the basis for

IRIC's declaratory judgment claims against the Reinsurers as well as the basis for the

alternative request for arbitration)).

Because IRIC's claims against the Reinsurers are separate and independent from

Huntsman's claims, the entire action is removable under section 1441(c) if IRIC's claims

against the Reinsurers are within federal-question jurisdiction.  *See* 28 U.S.C. § 1441(c).  The

asserted basis for the federal-question jurisdiction is the Convention.  The Reinsurers contend

that the relevant portions of the Convention are contained in 9 U.S.C. §§ 203 and 205.  (*See*

Docket Entry No. 35 at 9).

Section 203 provides:

> An action or proceeding falling under the Convention shall be
> deemed to arise under the laws and treaties of the United States.
> The district courts of the United States . . . shall have original
> jurisdiction over such an action or proceeding, regardless of the
> amount in controversy.

9 U.S.C. § 203.

Section 205 provides:

> Where the subject matter of an action or proceeding pending in
> a State court relates to an arbitration agreement or award falling
> under the Convention, the defendant or the defendants may, at
> any time before the trial thereof, remove such action or
> proceedings to the district court of the United States for the
> district and division embracing the place where the action or
> proceeding is pending.  The procedure for removal of causes
> otherwise provided by law shall apply, except that the ground
> for removal provided in this section need not appear on the face

of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205.[13]

If the third-party claims "fall under" the Convention, as described in section 203, those claims will provide federal-question jurisdiction over separate and independent claims, allowing removal under section 1441(c). As the *Roser* court explained:

> The Convention applies to an arbitration agreement if: (1) there is a written agreement to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a signatory to the Convention; (3) the agreement arises out of a commercial legal relationship; and (4) the agreement is not solely between citizens of the United States.

*Roser*, 2003 WL 22174282, at *3 (citations and internal footnote omitted). The Fifth Circuit has described the broad sweep of actions removable section 205.[14] In *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002), the court held:

> [W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" . . . the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a

---

[13] Although the *Roser* and *Ballard* cases examine removal under section 205, that section applies only to removal under the Convention. In this case, removal is under section 1441(c), with the Convention providing federal-question jurisdiction over the separate and independent claims (rather than providing the removal procedure).

[14] Although the removal in this case is under section 1441(c), with the Convention providing the basis for federal-question jurisdiction, the Convention's removal provision reveals the intended scope of jurisdiction under the Convention.

> defense.  As long as the defendant's assertion is not completely
> absurd or impossible, it is at least conceivable that the
> arbitration clause will impact the disposition of the case.  That
> is all that is required to meet the low bar of "relates to."

*Id.*  In describing a potential waiver of the right to remove under section 205, the *Beiser* court

emphasized the broad approach to federal jurisdiction under the Convention:

> A party may only waive his right to remove under the statute by
> clearly and explicitly saying so in the agreement.  One important
> reason for the clear statement rule was our conclusion that
> Congress favored federal jurisdiction over Convention-related
> claims in order to promote the development of a uniform body
> of law under the Convention.  [In *McDermott*, w]e quoted
> language from the Supreme Court that the "goal of the
> Convention, and the principal purpose underlying American
> adoption and implementation of it, was . . . to unify the
> standards by which agreements to arbitrate are observed and
> arbitral awards are enforced in the signatory countries.
> Reducing local variations in how courts interpret and enforce
> arbitration clauses makes it easier for businesses engaged in
> international transactions to use and rely on such clauses.

*Id.* at 672–73 (internal citations omitted).  Although this discussion relates to when a waiver

of federal removal rights is effected, the court emphasized that cases falling under the

Convention should be determined under a uniform federal body of law.

Huntsman has not specifically disputed that: (1) there is a written agreement to

arbitrate between IRIC and the Reinsurers; (2) the agreement provides for arbitration in the

United States, which is a signatory to the New York Convention; (3) the agreement arises out

of a commercial legal relationship; or (4) the agreement is not solely between citizens of the

United States.  Instead, Huntsman relies on the premise that third-party defendants may not

remove cases under the Convention, a proposition that this court has determined to be inapplicable because removal is under the procedure provided in section 1441(c).

The Reinsurance Certificates include a written agreement to arbitrate. (*See* Docket Entry No. 35, Ex. E at § (C)(13) ("Where any dispute between the parties arising out of or in connection with this Agreement including formation and validity and whether arising during or after the period of this Agreement has not been settled through negotiation, both parties agree to try in good faith to settle such dispute by non binding mediation, before resorting to arbitration in the manner set out below.")). The Reinsurance Certificate submitted with the Reinsurers' opposition to the remand motion provides that arbitration will take place in New York.[15] (*See id.*, Ex. E at § (C)(13) ("The seat of the arbitration shall be New York.")). The reinsurance contract "arises out of a commercial legal relationship" between IRIC and the Reinsurers for the provision of reinsurance. *See Roser*, 2003 WL 22174282, at *4 (holding that a marine protection and indemnity insurance agreement constituted a commercial legal relationship); *see also Phillips Petroleum Co. v. All Am. Marine Ship*, No. Civ. A. 98-1530, 1998 WL 398178, at *3 (E.D. La. July 15, 1998) ("[T]here is no doubt that the arbitration agreements referred to in these written policies arose from a commercial legal relationship among the insured and the various insurers."), *supplemented on reconsideration*, No. Civ. A. 98-1530, 1998 WL 614188 (E.D. La. Sept. 10,

---

[15] The parties have only submitted samples of the Reinsurance Certificates, rather than submitting all applicable certificates. (*See* Docket Entry No. 1, Ex. E, Facultative Reinsurance Certificate; Docket Entry No. 35, Ex. E, Facultative Reinsurance Certificate). Huntsman has represented that the relevant Reinsurance Certificates are "nearly identical." (*See* Docket Entry No. 13 at 2).

1998).  Finally, some of the Reinsurance Certificates are not solely between U.S. citizens.  (*See, e.g.*, Docket Entry No. 1, Ex. E at 1 (noting that the Reinsurance Certificate is issued by Partner Reinsurance Co. of Bermuda, with an address in Zurich, Switzerland)).  The criteria for the Convention to apply to the Reinsurance Certificates are met in this case as a result of the arbitration agreements contained in the Certificates.  *See Roser*, 2003 WL 22174282, at *3.

IRIC's third-party claims fall within section 205 because they "relate to" arbitration agreements that at least "could *conceivably* affect the outcome" of IRIC's claims.  *See Beiser*, 284 F.3d at 669.  IRIC's third-party claims also are within the scope of section 203 because they "fall under" the Convention.  IRIC's alternative request to compel arbitration under the Reinsurance Certificates is a claim to enforce an agreement falling under the Convention.  *See Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290–91 (11th Cir. 2004) ("The FAA [, which 'ratifies and incorporates the Convention,'] provides two causes of action in federal district court for enforcing arbitration agreements falling under the Convention: an action to compel arbitration pursuant to an arbitration agreement falling under the Convention, 9 U.S.C. § 206, and an action to confirm an arbitration award made pursuant to an agreement falling under the Convention, 9 U.S.C. § 207.").

IRIC's declaratory-judgment claims also fall under the Convention because the claims are based on the Reinsurance Certificates.  The declaratory judgment claims seek to enforce contracts containing the arbitration clauses and could be met by a motion seeking to compel arbitration.  *See Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 299

(S.D.N.Y. 1997) (breach of contract claim fell under the Convention because the contract contained an agreement to arbitrate falling under the Convention); *see also Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1071 (E.D. Wis. 2008) (finding federal jurisdiction because some of the claims and defenses were "related to an arbitration proceeding under the Convention").

The broad scope of the Convention's removal provision and the policy favoring a uniform body of federal law interpreting agreements under the Convention both support the conclusion that IRIC's third-party claims against the Reinsurers are subject to federal-question jurisdiction under the Convention. With federal-question jurisdiction under the Convention, and removal jurisdiction under section 1441(c), the Reinsurers properly removed this entire case to federal court.

### C.    Waiver of the Right to Remove

Huntsman also argues that the Reinsurers waived their right to remove by agreeing to follow the terms of the Huntsman-IRIC Policy, which Huntsman alleges gives Huntsman the right to litigate claims against IRIC in a court of Huntsman's choosing. (*See* Docket Entry No. 13 at 13–14; Docket Entry No. 53 at 2–3). Huntsman points to language in the Reinsurance Certificates stating that "Reinsurers agree to follow all terms, clauses, conditions, alterations, amendments, and agreements as agreed per the [Huntsman-IRIC] Policy." (Docket Entry No. 13 at 13 (citing Docket Entry No. 1, Ex. E at § (C)(1))). Huntsman also points to the following language in the Huntsman-IRIC Policy:

> It is agreed that in the event of [disputes] relating to this policy,
> [IRIC], at the request of [Huntsman], will submit to the
> jurisdiction of any court of competent jurisdiction within the
> United States and will comply with all of the requirements
> necessary to give such court jurisdiction . . . [IRIC] <u>will not
> transfer, change venue, or remove, or seek to transfer, change
> venue, or remove any lawsuit filed by [Huntsman] in any such
> court.</u>

(*Id.* at 14 (emphasis added by Huntsman) (citing Huntsman-IRIC Policy at 29, ¶ 44)).[16]

Huntsman contends that "because Huntsman's suit against IRIC unquestionably seeks to

settle a coverage dispute and will turn on the terms of the Huntsman-IRIC policy,

Huntsman's claims in this action are clearly of the type that the Third-Party Defendant

Reinsurers agreed would be litigated in a court of Huntsman's choosing." (*Id.*).

In opposition, the Reinsurers argue that they reserved their rights to file a declaratory

judgment, to remove to federal court, and to move to transfer to an alternate venue. (Docket

Entry No. 35 at 23). The Reinsurers point to the Service-of-Suit Clause contained in the

Reinsurance Certificates, which states:

> It is agreed that in the event of the failure of the Underwriters
> hereon to pay any amount claimed to be due hereunder, the
> Underwriters hereon, at the request of the Insured (or
> Reinsured), will submit to the jurisdiction of a Court of
> competent jurisdiction within the United States. <u>Nothing in this
> Clause constitutes or should be understood to constitute a waiver
> of Underwriters' rights to commence an action in any Court of
> competent jurisdiction in the United States, to remove an action
> to a United States District Court, or to seek a transfer of a case
> to another Court as permitted by the laws of the United States or</u>

---

[16] Although Huntsman did not cite to a particular exhibit, the relevant portion of the Huntsman-IRIC
Policy is attached as Exhibit 1 to the Affidavit of G. Jeanne Busselle, which is attached to Docket Entry No.
13.

<u>of any State in the United States.</u>

(*Id.* (emphasis added by the Reinsurers) (quoting Docket Entry No. 35, Ex. E at Attachment D)).

The Reinsurers did not waive their right to removal by executing the Reinsurance Certificates.  The Reinsurers are not parties to the Huntsman-IRIC Policy.  Although the Reinsurers agreed through the Reinsurance Certificates to follow the terms of the Huntsman-IRIC Policy, the Huntsman-IRIC Policy specifies only that in disputes under that Policy, at the request of Huntsman, *IRIC will submit to the jurisdiction* of any court of competent jurisdiction within the United States and *will not transfer, change venue, or remove*, or seek to transfer, change venue, or remove any lawsuit filed by Huntsman.  (Docket Entry No. 13, Affidavit of G. Jeanne Busselle, Ex. 1 at ¶ 44).  Although the Reinsurers agreed to follow the terms of the Huntsman-IRIC Policy, removal *by the Reinsurers* of *third-party claims made by IRIC* against the Reinsurers is not inconsistent with the requirement in the Huntsman-IRIC Policy that *IRIC will submit to the jurisdiction* of Huntsman's choosing and that *IRIC will not remove* a case filed by Huntsman.

In addition, the section in the Reinsurance Certificates stating that the Reinsurers agree to follow the terms of the Huntsman-IRIC Policy carves out specific exclusions in the Reinsurance Certificates.  (*See* Docket Entry No. 35, Ex. E at § (C)(1)).  To the extent the Reinsurers are bound by the forum-selection clause in the Huntsman-IRIC Policy, Attachment D to the Reinsurance Certificates may be a specific exclusion from the agreement to follow the terms of the Huntsman-IRIC Policy.  Attachment D, which contains

the Service-of-Suit Clause, states that on the Reinsurers' failure to pay an amount due under the Reinsurance Certificates, at the request of Huntsman or IRIC, the Reinsurers will submit to jurisdiction in a court of competent jurisdiction within the United States.  (*Id.*, Ex. E at Attachment D).  The Service-of-Suit Clause states that nothing in that Clause constitutes a waiver of the right to remove an action to federal court.  (*Id.*, Ex. E at Attachment D).  Given that removal by the Reinsurers is not inconsistent with the express terms of the Huntsman-IRIC Policy and that the Reinsurance Certificates expressly reserve the right to remove despite agreeing to submit, at the request of Huntsman or IRIC, to jurisdiction in a court of competent jurisdiction within the United States, the Reinsurers did not waive their right to remove a third-party action brought against them by IRIC.

Waiver requires the intentional relinquishment of a known right.[17]  *See N. Am. Specialty Ins. Co. v. Debis Fin. Servs., Inc.*, 513 F.3d 466, 470 (5th Cir. 2007) ("Waiver is generally understood to be the intentional relinquishment of a known existing legal right. For waiver to occur, there must be an existing right, knowledge of its existence, and either an actual intention to relinquish that right or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.") (internal

---

[17] Waiver of the right to remove under the Convention's removal provision is very strictly construed. *See Beiser*, 284 F.3d at 672 ("A party may only waive his right to remove under the statute [section 205] by clearly and explicitly saying so in the agreement.  One important reason for the clear statement rule was our conclusion that Congress favored federal jurisdiction over Convention-related claims in order to promote the development of a uniform body of law under the Convention.") (internal citation omitted).  Although removal in this case is appropriate under section 1441(c), with the Convention providing the basis for federal-question jurisdiction over the separate and independent third-party claim, the fact that removal under the Convention has been recognized as an important right that is not easily waived supports the conclusion that no waiver took place under the facts presented here.

footnote, citation, and quotation marks omitted).  The Reinsurers did not intentionally relinquish a known right to remove by agreeing to follow the terms of the Huntsman-IRIC Policy.  The Huntsman-IRIC Policy did not prevent the Reinsurers from removing.  The Reinsurance Certificates specify that the Service-of-Suit Clause does not waive their right to remove to federal court.  If the Reinsurers had already waived the right to remove by agreeing to follow the terms of the Huntsman-IRIC Policy, there would have been no reason to reserve that right in connection with the Service-of-Suit Clause contained in an attachment to the Reinsurance Certificates.[18]

Huntsman points to the recent decision in *Ensco Int'l Inc. v. Certain Underwriters at Lloyd's*, No. 3:07-CV-1581-O, 2008 WL 958205 (N.D. Tex. April 8, 2008), for the proposition that an insurer waives the right to remove an action to federal court if the contract allows the other party to select the forum to resolve disputes.  (*See* Docket Entry No. 62 at 2–3).  In *Ensco*, the plaintiff initiated suit in Texas state court, alleging that the defendants had wrongfully denied coverage under several insurance policies.  2008 WL 958205, at *1.

---

[18] Huntsman argues that the Service-of-Suit Clause provides only that nothing "in the Clause" constitutes a waiver of the Reinsurers' right to remove.  (Docket Entry No. 65 at 2).  Huntsman asserts that it is not claiming that the Service-of-Suit Clause created a waiver, but that the Reinsurers waived their right to remove by agreeing to follow the terms and conditions of the Huntsman-IRIC Policy, which contains a forum-selection clause granting Huntsman the exclusive right to select the venue for its insurance coverage action.  (*Id.*).  However, as discussed earlier, the fact that the Reinsurers agreed to be bound by the terms and conditions of the Huntsman-IRIC Policy did not waive their right to remove because that Policy only expressly precludes removal by IRIC.  In addition, the fact that the Service-of-Suit Clause, which is contained in an attachment to the Reinsurance Certificates, specifies that the Clause is not intended to constitute a waiver of the right to remove is inconsistent with the theory that the Reinsurers had already waived their right to remove in the Reinsurance Certificates themselves.  The fact that the Service-of-Suit Clause states that the Clause is not intended to constitute a waiver of the right to remove is also inconsistent with waiver theory in general.  It is unlikely that such language would be used in an attachment to a contract if the parties reserving the right to remove the action had already voluntarily given up that known right in the contract itself.

The defendants removed the action under the Convention.  *Id.*  The plaintiffs sought remand on the basis that a forum-selection clause in the policies, giving the "Courts of Dallas County, Texas" exclusive jurisdiction over any disputes, expressly waived the defendants' right to remove.  *Id.* at *1.  The forum-selection clause at issue provided that "[a]ny disputes arising under or in connection with [the insurance] shall be subject to the exclusive jurisdiction of the Courts of Dallas County, Texas."  *Id.* at *2 (additional quotation marks omitted).  The court explained that "[i]nsurance policies are contracts and therefore subject to the same rules of construction applicable to all contracts.  If an insurance policy is worded so that it can be given only one reasonable construction, it will be enforced as written."  *Id.* (internal citations and quotation marks omitted).  The court noted that a party may waive a right to remove if "'the provision of the contract makes clear that the other party to the contract has the 'right to choose the forum' in which any dispute will be heard.'"  *Id.* at *3 (quoting *Waters v. Browning-Ferris Indus., Inc.*, 252 F.3d 796, 797 (5th Cir. 2001)).  The court stated: "[B]ased on the plain language of the forum selection clause, the Court holds that the state courts of Dallas County, Texas have exclusive jurisdiction over Plaintiff's claims against Defendants."  *Ensco*, 2008 WL 958205, at *3.

In *Ensco*, the forum-selection clause in the insurance agreement clearly provided that disputes between the parties would be resolved in particular state courts.  The federal court found that the insurer—a party to the insurance agreement—had waived the right to remove because the insurance agreement had a forum-selection clause.  *See id.*  In contrast, IRIC may have agreed to waive its right to remove by the language in the Huntsman-IRIC Policy, but

45

the Reinsurers did not expressly waive the right to remove.  The fact that the Reinsurers agreed to be bound by the terms and conditions of the Huntsman-IRIC Policy did not expressly waive their right to remove because the Huntsman-IRIC Policy only specified that IRIC would not remove a lawsuit filed by Huntsman.  (*See* Docket Entry No. 13, Affidavit of G. Jeanne Busselle, Ex. 1 at ¶ 44).  Finding no waiver is further supported by the fact that the Reinsurance Certificates contemplate a dispute-resolution procedure separate from the forum-selection clause contained in the Huntsman-IRIC Policy, making it less likely that the Reinsurers intended to waive a right that is only expressly waived by IRIC.  (*See* Docket Entry No. 35, Ex. E at § (C)(13)).  While the clear language in the insurance policy at issue in *Ensco* allowed the court to find waiver of the right to remove, the language in the Huntsman-IRIC Policy and the Reinsurance Certificates does not clearly waive that right as to the Reinsurers.  The Reinsurers have not contractually waived their right to remove this action.

### D.     Discretionary Remand

#### 1.     The Parties' Contentions

Huntsman contends that even if this court has jurisdiction, it should exercise discretion to remand.  (Docket Entry No. 13 at 11).  Huntsman argues that its claims are based in state law and clearly predominate over IRIC's claims against the Reinsurers.  (*Id.*).  As a result, Huntsman argues that the entire case should be remanded.  (*Id.*).  Huntsman alternatively asks that if this court exercises jurisdiction over IRIC's claims against the Reinsurers, Huntsman's claims against IRIC should be remanded under section 1441(c) and section

1367.  (*Id.* at 12–13).  Huntsman contends that remand is appropriate "for the sake of expediency and judicial economy."  (*Id.* at 13).

In opposition, the Reinsurers contend that remand would undermine the broad federal jurisdiction provided under the Convention.  (Docket Entry No. 35 at 19).  The Reinsurers contend that "the Fifth Circuit has adopted a restrictive construction of a district court's authority to remand Convention cases in an effort to further the drafters' intent of achieving uniformity in this area of the law."  (Docket Entry No. 57 at 4 (citing *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1212 (5th Cir. 1991))).  The Reinsurers also argue that section 1441(c) only allows remand of "matters in which State law predominates."  (Docket Entry No. 35 at 20).  The Reinsurers contend that Huntsman is ultimately seeking recovery from the Reinsurers through the Reinsurance Certificates, making IRIC's claims against the Reinsurers the dominant claims in the litigation.  (*Id.*).

The Reinsurers also argue that a partial remand will result in three separate lawsuits involving Huntsman, IRIC, and the Reinsurers.  (*Id.* at 21–22).  The Reinsurers argue that the present lawsuit was filed after the Reinsurers filed suit in this court and that the issues are "virtually identical," making consolidation of all the lawsuits more efficient than three separate suits.  (*Id.* at 22).

### 2.    Analysis

When a district court exercises jurisdiction over a removed case, it has discretion to remand claims in which state law predominates.  *See Smith v. Estate of Wagner*, No. H-06-02629, 2006 WL 2729282, at *10 (S.D. Tex. Sept. 25, 2006) ("When a separate and

independent federal claim is joined with an otherwise non-removable claim, the defendant may remove the entire case, but this court may remand 'all matters in which [s]tate law predominates.'") (quoting 28 U.S.C. § 1441(c)); *see also U.S. Bank, N.A. v. City of Irving*, No. 3:06-CV-1805-G, 2007 WL 1073769, at *5 (N.D. Tex. Apr. 5, 2007) ("Though the court has jurisdiction over U.S. Bank's equal protection and Fourth Amendment claims, this court, in [its] discretion, finds that the state law claims predominate over these two federal claims. Thus, the court will not exercise supplemental jurisdiction over the state law claims.  In the interests of comity, judicial economy, and convenience, the court remands the state law claims . . . [and] the court retains only the plaintiff's equal protection claim and Fourth Amendment claim.").  A court also has discretion to remand an entire case removed under section 1441(c) if state law predominates, *see Miller v. John Sexton Sand & Gravel Corp.*, No. 4:96CV315-B-B, 1996 WL 909594, at *3 (N.D. Miss. Nov. 15, 1996) ("[T]he court concludes that a discretionary remand under § 1441(c) may involve remand of an entire action.") (footnote and citations omitted), and the court has broad discretion "in deciding whether or not '[s]tate law predominates,'" *id.* (citation omitted); *accord Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 463 F. Supp. 2d 583, 596 (E.D. La. 2006) ("'To allow the entire case to be removed to federal court on the basis of a relatively insignificant claim when compared to the state law claims is a classic illustration of 'the tail wagging the dog.' There can be no doubt that state law predominates in this case.'") (quoting *Miller*, 1996 WL 909594, at *4), *aff'd*, 485 F.3d 804 (5th Cir. 2007).  "[F]or remand to be proper, the claim remanded must be (1) a separate and independent claim or cause of action; (2) joined with

48

a federal question; (3) otherwise non-removable; and (4) a matter in which state law predominates." *Smith*, 2006 WL 2729282, at *10 (citing *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 327 (5th Cir. 1998)).

In *Miller*, the court explained that commentary on section 1441(c) provides that state law predominates "[i]f the federal court finds that the federal claim, while plausible, is not really the plaintiff's main mission, that it is only an incident or adjunct of the state claim, and that the state claim is the crux of the action . . . ." *Miller*, 1996 WL 909594, at *3 (quoting David D. Siegel, Commentary on 1998 and 1990 Revisions of Section 1441, in 28 U.S.C.A. § 1441 (1994)). In *Smith*, the court analyzed whether to remand particular state law claims that had been removed in connection with federal claims. *See Smith*, 2006 WL 2729282, at *11. The *Smith* court differentiated between state-law claims that ought to be remanded and those that ought to remain in federal court by looking at how the state claims related to, and the extent of factual overlap with, the federal claims. In determining whether remand is proper, courts consider "the interests of judicial economy, convenience, fairness, and comity." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 328 (5th Cir. 1998).[19]

This court declines to remand any of the pending claims. State law does not predominate in the third-party claims asserted against the Reinsurers because those claims

---

[19] The *Metro Ford Truck Sales* court found no abuse of discretion in the district court's remand of pendent state law claims because section 1441(c) authorized remand of the third-party RICO claim, and the interests of judicial economy, convenience, fairness and comity weighed in favor of remand of the pendent state law claims. *Metro Ford Truck Sales*, 145 F.3d at 328.

fall within the Convention.  There is a strong policy favoring resolution of Convention claims by federal courts to build a uniform body of Convention law.  *See McDermott*, 944 F.2d at 1212 ("Similarities between the removal statutes in the FSIA and the Convention Act indicate that Congress also sought unity by channeling Convention Act cases into federal courts.").  Because the arbitration agreement falls under the Convention, state law does not predominate in IRIC's third-party claims, and those claims should remain in federal court.  Although Huntsman argues that the primary purpose of this litigation is to determine insurance coverage issues under state law, (Docket Entry No. 53 at 10), state law does not predominate throughout the entire litigation because IRIC's claims against the Reinsurers seek to enforce the contracts containing an arbitration agreement falling under the Convention and also involve an alternative request that the court compel the Reinsurers to submit to arbitration under the alternative dispute provision in the Reinsurance Certificates. The third-party claims falling under the Convention are factually and legally related to Huntsman's claims. Their presence prevents state law from predominating over the entire litigation.

Huntsman's claims against IRIC are state-law claims that could be subject to a discretionary remand.  Huntsman's claims against IRIC relate to the failure to pay insurance proceeds and are factually intertwined with IRIC's claims against the Reinsurers for failure to pay under the Reinsurance Certificates.  Although Huntsman's claims and IRIC's claims have some factual differences, such as that the alleged obligations arise from separate contracts and that certain claims may ultimately be subject to arbitration, the factual

similarities and related allegations in both sets of claims weigh in favor of keeping them in the same case.  Because the Reinsurers filed their case in this court before Huntsman initiated this case in state court, and because the possibility exists for this factually related action to be consolidated with the Reinsurers' case pending in this court,[20] convenience and efficiency weigh in favor of keeping this case in this court.  *Cf. Carpenters Pension Trust for S. Cal. v. Ebbers*, 299 B.R. 610, 615 (C.D. Cal. 2003) (refusing to remand under 28 U.S.C. § 1452(b) a state court securities action that was removed on the basis of a bankruptcy filing, "given the potential judicial economy of consolidating this action in the MDL court . . .").

Remand of state-law claims can be appropriate under principles of comity and to protect the plaintiff's choice of forum.  *See Ballard*, 338 F. Supp. 2d at 715 ("The Court finds that although it has removal jurisdiction, Ballard's original action against ICRC and Clark should be remanded to the state court pursuant to § 1441(c), *to preserve the plaintiff's choice*

---

[20] The memorandum and opinion transferring this case to this court recognized the factual similarities between this action and the Reinsurers' previously filed federal action:

> In the case at bar, Huntsman and IRIC contend that the Southern District action [the Reinsurers' case] and the Eastern District action [this case] do not substantially overlap, asserting that the two cases involve the interpretation of different contracts—the Policy issued to Huntsman and the Reinsurance Certificates.  Huntsman and IRIC's argument is without merit.  Both lawsuits involve the same parties, the same loss, and the same underlying insurance policy.  At the center of each case is the question of whether Huntsman is due additional sums under the Policy and the Reinsurance Certificates for losses sustained in the Plant fire and the extent of any additional coverage.  Moreover, each lawsuit involves an interpretation of the dispute resolution provision contained in the Reinsurance Certificates.  While the two actions may not be identical, the court finds that these cases "'involve such substantially similar issues that one court should decide the subject matter of both actions.'"

(Docket Entry No. 59 at 7–8 (citations omitted)).

51

*of forum*.") (emphasis added) (citing *Carl Heck*, 622 F.2d at 133; *Davis*, 700 F. Supp. at 326–27); *see also Aiken v. Espin*, No. Civ. A. 4:02CV611-Y, 2005 WL 1489956, at *7 (N.D. Tex. June 22, 2005) ("'The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

Preserving the plaintiff's choice of forum is not a strong consideration in this case, however.  According to the Reinsurers' notice of removal, the Reinsurers filed suit against Huntsman and IRIC in this court on August 31, 2007, seeking to compel Huntsman and IRIC to arbitrate their dispute, or alternatively, to have the court enter a declaratory judgment. (Docket Entry No. 1 at ¶ 17).  According to the Reinsurers, Huntsman and IRIC requested a seven-day extension of the deadline for filing a responsive pleading in the Reinsurers' case. (*Id.* at ¶ 18).  On September 21, 2007, the parties filed a motion in the Reinsurers' case to extend the deadline for Huntsman and IRIC to file responsive pleadings.  (*Id.*).  On September 21, 2007—the same day that Huntsman and IRIC jointly filed an Agreed Motion to Extend Deadlines in the Reinsurers' case—Huntsman filed the present action against IRIC in state court.  (*Id.* at ¶ 19).  The Reinsurers point out that also on September 21, 2007, Huntsman made a demand for payment from IRIC, which IRIC allegedly denied. (*Id.*).  On the same day, Huntsman filed a motion to dismiss the Reinsurers' complaint in the Reinsurers' case.  (*Id.*).  The following events all occurred on September 21, 2007: (1) Huntsman and IRIC filed a motion to extend the deadlines for filing responsive pleadings in

the Reinsurers' federal action; (2) Huntsman made a demand for payment from IRIC; (3) IRIC denied Huntsman's demand; (4) Huntsman sued IRIC in state court; and (5) Huntsman filed a motion to dismiss in the Reinsurers' federal case.  The Reinsurers filed their action first in federal court on the same underlying facts as Huntsman's later action against IRIC in state court.  Huntsman's later state-court suit against its own subsidiary does not present the kind of fairness consideration supporting remand.

In sum, the facts of this case and considerations of fairness, judicial economy, and convenience weigh in favor of keeping the state claims with the federal claims at this time. This court declines to exercise discretion to remand any portion of the case.  Having concluded that federal-question jurisdiction exists and that a discretionary remand is not appropriate, this case will proceed in this court.

## IV.    Conclusion

Huntsman's motion to remand this case to state court, (Docket Entry No. 13), is denied.

SIGNED on September 26, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge